FILED
4/7/25 10:31 am
CLERK
U.S. BANKRUPTCY
COURT - WDPA

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Case No. 24-22306-GLT |
| | : | |
| **JUSTIN THOMPSON KRENITSKY** and **JENNIFER LYNN KRENITSKY**, | : | Chapter 13 |
| | : | |
| *Debtors*. | : | Related to Dkt. Nos. 34, 38 |
| | : | |

Dai Rosenblum, Esq.  
Butler, PA  
*Attorney for the Debtors*

Owen W. Katz, Esq.  
Office of the Chapter 13 Trustee  
Pittsburgh, PA  
*Attorney for the Ronda Winnecour*

## MEMORANDUM OPINION

Since *Schedule J* requires an "estimate" of ongoing monthly expenses, debtors Justin and Jennifer Krenitsky provided averages of the Internal Revenue Service's National and Local Standards for allowable living expenses.[1] The result is monthly net income of $2.39 which unsurprisingly translates to a plan that offers no dividend to general unsecured creditors.[2] The chapter 13 trustee opposes plan confirmation[3] because the Debtors' "estimated" expenses and unsubstantiated income prevent an assessment of their best efforts under section 1325(b)(1)(B) of the Bankruptcy Code.[4] The Debtors promise to supply their paystubs but otherwise retort, "[w]hat better way to estimate than by using the I.R.S. statistics?"[5] Frankly,

---

[1] See *Schedule J: Your Expenses*, Dkt. No. 16 at 35-36 ("Above figures are taken from IRS averages for a family of 4 in Pennsylvania.").

[2] See id. at 36; *Chapter 13 Plan Dated: OCTOBER 16, 2024*, Dkt. No. 21.

[3] *Chapter 13 Trustee's Objection to 10/16/24 Plan and Request Case Be Dismissed*, Dkt. No. 34.

[4] Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific sections shall be to the Bankruptcy Reform Act of 1978, as thereafter amended, 11 U.S.C. § 101, *et seq*. All references to "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure.

[5] *Debtor's Response to Trustee's Objection to 10/16/24 Plan and Request Case Be Dismissed*, Dkt. No. 38 at 4 n.3.

they are wrong for several fairly obvious reasons outlined below.[6] Therefore, the Court will sustain the trustee's objection and, among other things, order the Debtors to file an amended *Schedule J*.

## I.    JURISDICTION

This Court has authority to exercise jurisdiction over the subject matter and the parties under 28 U.S.C. §§ 157(a), 1334, and the Order of Reference entered by the United States District Court for the Western District of Pennsylvania on October 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (L).

## II.    DISCUSSION

Under section 1325(b)(1), the court may not confirm a chapter 13 plan over the trustee's objection unless

> the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan.[7]

Given its devotional requirements, "this section is also known as the 'best efforts test.'"[8] Because the Debtors' income is below median for the Commonwealth of Pennsylvania,

> "disposable income" means current monthly income [subject to certain exclusions not relevant here] *less amounts reasonably necessary to be expended*—for the maintenance or support of the debtor or a dependent of the debtor . . . ."[9]

As cogently explained in *In re Turner*:

---

[6]    While the Debtors' argument regarding *Schedule J* plainly lacks merit, the Court declines to view it as so frivolous as to implicate Bankruptcy Rule 9011. See Fed. R. Bankr. P. 9011(b). Indeed, the Court suspects that this position was born from the difficulties in pinning down the Debtors' actual expenses.

[7]    11 U.S.C. § 1325(b)(1)(B).

[8]    In re Turner, No. 09-18816-WCH, 2010 WL 2509966, at *3 (Bankr. D. Mass. June 17, 2010).

[9]    11 U.S.C. § 1325(b)(2)(A)(i) (emphasis added).

2

> Because 11 U.S.C. § 1325(b) . . . uses the same phrase to describe permissible maintenance and support that existed prior to [the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA")], many courts have concluded that BAPCPA did not change the standard as applied to below median income debtors.
>
> Prior to BAPCPA, "reasonably necessary" expenses were evaluated on a case by case basis. Rather than establishing strict guidelines, courts instead sought to "strike a balance between debtors being required 'to adopt a totally spartan existence' and allowing them to 'continue an extravagant lifestyle at the expense of creditors.'" Generally, courts construed "reasonably necessary" as a standard of adequacy, supporting basic needs, and not related to the lifestyle to which one was accustomed.[10]

While below-median income debtors' expenses receive individual consideration, those above-median must undergo the "Means Test" to determine their "disposable income" using expenses largely dictated by the IRS' National and Local Standards.[11]

The logical starting point for determining the reasonable necessity of a chapter 13 debtor's expenses when not subject to the Means Test has always been *Schedule J*.[12] After all, section 521(a) requires all debtors, even those above-median, to file "a schedule of current

---

[10] In re Turner, 2010 WL 2509966, at *3 (footnotes omitted).

[11] 11 U.S.C. § 1325(b)(3) ("Amounts reasonably necessary to be expended under paragraph (2) ... shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2) . . ."); see 11 U.S.C. § 707(b)(2)(A)(ii)(I) ("The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides . . ."); see also U.S. Tr. v. Kubatka (In re Kubatka), 605 B.R. 339, 355 (Bankr. W.D. Pa. 2019) ("Under the so-called "Means Test," a debtor's monthly disposable income is determined by deducting from current monthly income only those monthly expenses set forth in section 707(b)(2)(A)(ii), some of which are fixed amounts based on national standards and not the debtor's actual expenses. Other actual expenses may not be deducted at all."); McKinney v. McKinney (In re McKinney), 507 B.R. 534, 543 (Bankr. W.D. Pa. 2014) ("When examining the Debtor's projected disposable income, the Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (Official Form 22C, hereinafter "Form B22C") "is presumed to be an accurate reflection of a debtor's projected disposable income for purposes of 11 U.S.C. § 1325(b)(1).")

[12] See In re Miller, 361 B.R. 224, 226 (Bankr. N.D. Ala. 2007) ("Prior to the bankruptcy amendments, Schedules I and J were the primary source of evidence used to satisfy the disposable income test under § 1325(b). Upon objection to confirmation under § 1325(b), courts examined a debtor's current monthly income and expenses reported on Schedules I and J.").

3

income and current expenditures."[13] Bankruptcy Rule 1007(b) adds that the debtor's "schedule of current income and expenditures" must be "prepared as prescribed by the appropriate Official Form."[14] Official Form 106J, captioned "*Schedule J: <u>Your</u> Expenses*," instructs the filer to "[e]stimate <u>your</u> expenses as of your bankruptcy filing date" under the heading "Estimate <u>Your</u> Ongoing Monthly Expenses."[15] In fact, the word "your" is used 36-times on the form, nine of which directly precede "expenses."[16] The first line also cautions the filer to "[b]e as complete and accurate as possible."[17]

Rather than taking cues from the ubiquitous use of "your" or the need to be "accurate," the Debtors instead focus on the directive to "estimate . . . monthly expenses."[18] "Estimate," of course, is a transitive verb which commonly means "to determine roughly the size, extent, or nature of" a direct object.[19] The Debtors posit the IRS averages they employed are the best "estimate" available because they are based on statistical information about the expenses of similarly sized families in Pennsylvania. But the direct object to which "estimate" relates on *Schedule J* is "<u>your</u> expenses."[20] Put simply, the Debtors were charged with estimating *their actual expenses*, not simply plugging in "estimates" that are neither theirs, nor current, nor even expenses.

Practically, the Debtors are essentially arguing that the IRS' National and Local Standards should be presumptively "reasonably necessary" and therefore universally appropriate

---

| | |
|---|---|
| 13 | 11 U.S.C. § 521(a)(1)(B)(ii). |
| 14 | Fed. R. Bankr. P. 1007(b)(1)(B). |
| 15 | Official Form 106J (effective December 1, 2015) (underline added). |
| 16 | Id. |
| 17 | Id. |
| 18 | Id. |
| 19 | ESTIMATE, Merriam-Webster Dictionary (2025), https://www.merriam-webster.com/dictionary/estimate |
| 20 | Official Form 106J (effective December 1, 2015) (underline added). |

for *Schedule J* without regard to actual expenses. This is apparent from their acknowledgment on *Schedule J* that the amounts supplied were not estimates of actual expenses.[21] Yet the Code does not provide a presumptive safe harbor for expenses, and sections 707(b)(2) and 1325(a)(3) show that Congress knew how to draft such a brightline rule if intended. Still, the Debtors rely on the following passage of a leading consumer bankruptcy treatise as a recommendation for this approach:

> [T]he maximum good faith estimate of anticipated necessary expense should be used. Generally, expenses that do not exceed those permitted by the chapter 7 means test will not be questioned as unreasonable.[22]

Plainly, this quote only suggests that *good faith* estimates of *anticipated* expenses will likely not raise alarms if under the amount permitted by the Means Test. It does not endorse the view that debtors can opt out of estimating their own expenses in favor of plug-in statistics.

Finally, the Debtors dubiously liken their approach to the accepted practice of "cushioning" a debtor's expenses on *Schedule J* against anticipated fluctuations over the life of the plan.[23] Admittedly, that is where the concept of estimating comes in. The flaw in their position is that it is unclear how much of their stated expenses are cushion—the amount above the actual expense—or whether they are reasonable. Again, the Debtors seem to be advocating for a brightline amount that is antithetical to the Code's express treatment of below-median income debtors.

---

[21] *Schedule J: Your Expenses*, Dkt. No. 16 at 36 ("Above figures are taken from IRS averages for a family of 4 in Pennsylvania.").

[22] *Debtor's Response to Trustee's Objection to 10/16/24 Plan and Request Case Be Dismissed*, Dkt. No. 38 at 4 n.3 (quoting Sommer, CONSUMER BANKRUPTCY LAW AND PRACTICE, § 7.3.7.6 (13th ed. 2023)).

[23] See id. (citing In re Swan, 368 B.R. 12, 21 (Bankr. N.D. Cal. 2007), a case involving the calculation of an above-median income debtors' disposable income under the Means Test, for the proposition that "debtors must consider future increases to expenses.").

5

Bottom line: just as they have for decades, all debtors must estimate their *actual* expenses on *Schedule J*.

### III.    CONCLUSION

In light of the foregoing, the Court will sustain the chapter 13 trustee's objection to confirmation and, *inter alia*, require the Debtors to file an amended *Schedule J*. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052. The Court will issue a separate order consistent with this opinion.

ENTERED at Pittsburgh, Pennsylvania.

Dated: April 7, 2025

GREGORY L. TADDONIO
CHIEF UNITED STATES BANKRUPTCY JUDGE

Case administrator to mail to:
Debtors